# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

THERESA S. AMERI and
THOMAS LENK,[1]

     Plaintiffs,

vs.                                     No. CIV 14-0966 JB/SCY

GEICO GENERAL INSURANCE
COMPANY,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Theresa S. Ameri's oral motion at the June 10, 2015, hearing to compel Defendant GEICO General Insurance Company ("GEICO") to allow her to depose Austin Bratton, a GEICO claims adjuster, and award attorney's fees ("Motion").[2]  The Court held a hearing on June 10, 2015.  The primary issues are:

---

[1] On October 27, 2014, Plaintiff Thomas Lenk filed Thomas Lenk's Notice of Dismissal Without Prejudice (Doc. 5)("Notice").  In the Notice, Lenk agreed to dismiss all of his claims against Defendant GEICO General Insurance Corporation under rule 41 of the Federal Rules of Civil Procedure.  Notice at 1.  Although Lenk dismissed his claims against GEICO last October -- i.e., before the parties litigated the motion that this Memorandum Opinion and Order resolves -- GEICO often refers to the "Plaintiffs" in its briefing.  For clarity and consistency, when referring to or quoting GEICO's briefing, the Court will use whatever term that GEICO uses, with the understanding that Lenk is no longer a plaintiff and that Plaintiff Theresa S. Ameri is the only remaining plaintiff in this case.

[2] At a hearing on June 10, 2015 -- which the Court held on the Plaintiff's Motion and Authorities to Compel Complete Discovery Responses, filed April 7, 2015 (Doc. 53) -- Ameri mentioned to the Court that she had asked GEICO to allow her to depose Bratton.  See Transcript of Hearing at 42:9-15 (Valle)(taken June 10, 2015)("Tr.")(The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version; any final version may contain slightly different page and/or line numbers).  GEICO said that it opposed the request, because Bratton has no affiliation with this case and had no dealings with Ameri.  See Tr. at 44:12-15 (Perry).  GEICO asked the Court for permission to brief the issue, and the Court proposed that it could resolve the issue informally and that the parties could brief the issue by

(i) whether the Court should compel GEICO to allow Ameri to depose Bratton; and (ii) whether the Court should award attorney's fees to Ameri for having to litigate the Motion.  The Court will grant the Motion in part and deny it in part.  The Court will order GEICO to allow Ameri to depose Bratton.  The Court will not order GEICO to pay Ameri's attorney's fees for litigating the Motion, however, because of the unique informal circumstances in which Ameri raised the Motion.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint for Unfair Practices and for UM/UIM Insurance Benefits, filed in state court on October 6, 2014, filed in federal court on October 27, 2014 (Doc. 1-1)("Complaint").  Ameri is a resident of San Juan County, New Mexico.  See Complaint ¶ 1, at 1.  Thomas Lenk is a resident of Bernalillo County, New Mexico.  See Complaint ¶ 2, at 1.  GEICO is a foreign corporation that does business in New Mexico with its agent for service of process in Santa Fe County, New Mexico.  See Complaint ¶ 3, at 1.

Ameri bought GEICO insurance policy number 4171003843 (the "Policy"), which covered Ameri, Lenk, and Ameri's 2013 Honda vehicle during the events set forth in the Complaint.  See Complaint ¶ 6, at 2; id. ¶ 50, at 5.  On October 13, 2013, Ameri was driving westbound on the Interstate-40 frontage road near 2nd Street, N.W., in Albuquerque, New Mexico.  See Complaint ¶¶ 7-9, at 2.  Lenk was sitting in the front-passenger seat of Ameri's car.  See Complaint ¶¶ 7-9, at 2.  At the same time, Richard Marquez was driving another vehicle ("Vehicle 1") northbound on 2nd Street, N.W., when he ran the red light at 2nd Street, N.W. at the Interstate-40 frontage road and struck Ameri's vehicle.  Complaint ¶¶ 10-11, at 2.  The rules of the road required Marquez to keep a proper lookout and to yield when other vehicles have the

---

submitting letters to the Court.  See Tr. at 44:16-46:5 (Court).  The parties agreed to the Court's proposed solution.  See Tr. at 47:7-25 (Valle, Perry).

right of way, but Marquez failed to use ordinary care, failed to keep a proper look out, and failed to yield to Ameri's right of way.  Complaint ¶¶ 12-13, at 2.  The crash happened "100% due to the fault of Marquez."  Complaint ¶ 14, a 2.  An Albuquerque Police Department officer was dispatched to the accident.  Complaint ¶ 15, at 2.  A witness at the scene told the officer that she saw Vehicle 1 run the red light and cause the accident.  See Complaint ¶ 17, at 2.  The officer documented in his police report that Marquez failed to yield to Ameri's right of way.  See Complaint ¶ 18, at 3.

The collision caused Ameri and Lenk to suffer serious bodily injuries.  See Complaint ¶ 15, at 2; id. ¶ 24, at 3.  Ameri and Lenk received treatment for their injuries from multiple medical providers.  See Complaint ¶ 31, at 4.  Ameri and Lenk first "made demand" for their damages on Vehicle 1's insurer, but Marquez did not have sufficient insurance to cover Ameri's and Lenk's damages.  See Complaint ¶¶ 25-26, at 3.  Marquez' insurer tendered its insurance policy limits, and Ameri and Lenk sought GEICO's approval to accept those insurance proceeds. See Complaint ¶ 27, at 3.

Thereafter, Ameri and Lenk "made demand for insurance policy benefits" from GEICO. Complaint ¶ 32, at 4.  Although the Policy provides uninsured and underinsured motorist coverage up to $100,000.00 per person and $300,000.00 per accident, GEICO has not paid Ameri or Lenk any bodily injury insurance benefits.  See Complaint ¶ 29, at 3; id. ¶¶ 33, 37, at 4. Various healthcare providers have demanded payment from Lenk and Ameri for the treatment that they received, but they cannot afford to pay all of their medical bills.  See Complaint ¶¶ 34-35, at 4.  One or more healthcare providers have pursued collection actions against Ameri and Lenk.  See Complaint ¶ 36, at 4.  Ameri and Lenk have advised GEICO of these collection efforts, but GEICO still has not paid them an advance or undisputed amount.  See Complaint

¶ 38, at 4.  Although the Policy provides for arbitration or trial of any disputes over insurance claims, GEICO refuses to agree to arbitration.  <u>See</u> Complaint ¶¶ 39-40, at 4.

Arbitration is an expedited proceeding that promptly resolves cases.  <u>See</u> Complaint ¶ 41, at 4.  More likely than not, the parties could have arbitrated this dispute in a time that would have minimized Lenk's and Ameri's healthcare providers' collection activities.  <u>See</u> Complaint ¶ 42, at 4.  Despite Lenk's and Ameri's inquiries, GEICO has not explained why it will not agree to arbitration.  <u>See</u> Complaint ¶¶ 43-44, at 4-5.  Lenk and Ameri then asked GEICO if it ever arbitrates uninsured motorist or underinsured motorist disputes in New Mexico, and GEICO again refused to respond.  <u>See</u> Complaint ¶¶ 45-46, at 5.  Over the last two years, GEICO has seldom, if ever, agreed to arbitrate uninsured or underinsured motorist disputes in New Mexico.  <u>See</u> Complaint ¶ 47, at 5.  GEICO has also not provided Ameri and Lenk "the claims handling to which they are entitled."  Complaint ¶ 49, at 5.

Ameri included out-of-pocket expenses for a rental vehicle, and for registration and sales tax for her lease-to-own vehicle, in her demands to GEICO.  <u>See</u> Complaint ¶¶ 51-52, at 5.  GEICO has refused to pay these expenses.  <u>See</u> Complaint ¶¶ 52-53, at 5.  GEICO did not suggest at any time before Ameri or Lenk filed this suit that they were at fault for the accident.  <u>See</u> Complaint ¶ 30, at 4.

## PROCEDURAL BACKGROUND

Lenk and Ameri filed suit in state court on October 6, 2014, <u>see</u> Complaint at 1, and GEICO removed the case to federal court on October 27, 2014, <u>see</u> Notice of Removal, filed October 27, 2014 (Doc. 1-1).  Lenk and Ameri assert five causes of action: (i) breach of contract, <u>see</u> Complaint ¶¶ 55-63, at 6 (Count I); (ii) contractual benefits, <u>see</u> Complaint ¶¶ 64-67, at 6-7 (Count II); (iii) underinsured motorist benefits, <u>see</u> Complaint ¶¶ 68-71, at 7 (Count III);

(iv) unfair insurance claim practices, see Complaint ¶¶ 72-76, at 7-8 (Count IV); and (v) unfair trade practices, see Complaint ¶¶ 77-81, at 8 (Count V).  Lenk and Ameri ask for "all damages as determined at trial," the costs of this litigation, pre-judgment and post-judgment interest, reasonable attorney fees, punitive damages, "as well as an early mediation at Defendant's expenses as set forth in NMSA 1978 § 57-12-1 et seq., and for such other relief as the Court may deem just and proper."  Complaint at 8-9.

### 1. **The June 10, 2015, Hearing.**

The Court held a hearing on June 10, 2015.  See Transcript of Hearing (taken June 10, 2015)("Tr.").  The Court held a hearing on the Plaintiff's Motion and Authorities to Compel Complete Discovery Responses, filed April 7, 2015 (Doc. 53), in which Ameri asked the Court to compel GEICO to respond to multiple Interrogatories and Requests for Production.  See Motion at 1-2.  Towards the end of the hearing, however, Ameri mentioned that she has requested to depose an adjuster who works at GEICO, but who did not handle Ameri's claim file. See Tr. at 42:9-15 (Valle).  Ameri said that the adjuster "represented to another attorney that GEICO has a policy of never agreeing to arbitration in New Mexico."  Tr. at 43:2-5 (Valle). GEICO replied that the adjuster's name is Austin Bratton and said that it opposed Ameri's request, because Bratton has no affiliation with this case and has had no dealings with Ameri. See Tr. at 44:12-15 (Perry).  GEICO asked the Court for permission to fully brief the issue, so that GEICO "could have the record and the reasoning in the case law" from Ameri "on this particular witness."  Tr. at 44:16-18 (Perry).  Ameri asked the Court for attorney's fees for having to litigate a motion to compel.  See Tr. at 44:21-22 (Valle).

The Court replied:

I do a lot of things informally, and I don't mind doing them as long as everybody is comfortable with me doing it.  But if GEICO wants the opportunity to brief

> this, then on the third deposition I'll give them that . . . opportunity.  Maybe to
> move things forward this is what I would suggest, Ms. Perry . . . .  What if you
> sent a letter or some additional briefing on this issue or if you wanted to file a
> [motion] for protective order, however you te[e] it up but I'm comfortable with
> just a letter from you and maybe a response . . . as well from Mr. Valle, and then
> if you want to have the final word on it, you can send another letter, and that will
> move it forward.

Tr. at 45:16-46:5 (Court).   The parties agreed to the Court's proposed solution.   See Tr. at

47:7-25 (Valle, Perry).   The Court added that it was inclined to allow Ameri to depose Bratton:

"If you have an adjustor that's saying that out there that might well be admissible under the

agency or employee exceptions to the hearsay rule and it wouldn't even be an exception it just

wouldn't be hearsay so it might be binding on the corporation."  Tr. at 46:16-23 (Court).

### 2.     The June 22, 2015, Letter.

GEICO filed a letter on June 22, 2015.  See Letter from Meloney Perry, Attorney for

Defendant GEICO General Insurance Corporation, to the Court (dated June 22, 2015), filed June

22, 2015 (Doc. 72)("June 22, 2015 Ltr.").  In the June 22, 2015, Ltr., GEICO says that the Policy

provides that uninsured and underinsured motorist claims may be arbitrated, but that neither

party is required to arbitrate those claims unless New Mexico law expressly requires it.  See June

22, 2015, Ltr. at 2.   GEICO contends that New Mexico law does not require the arbitration of

uninsured and underinsured motorist claims.   See June 22, 2015, Ltr. at 2-3.   GEICO points to

McMillan v. Allstate Indemnity Co., 2004-NMSC-002, 84 P.3d 65, in which the Supreme Court

of New Mexico upheld a consensual arbitration provision in an uninsured and underinsured

motorist clause.   See June 22, 2015, Ltr. at 2-3.   GEICO contends that, because the Supreme

Court of New Mexico "has affirmed an insurer's right to have a consensual arbitration provision

in its policy, there can be no breach of contract or bad faith if the insurer opts to decline

arbitration in accordance with the provision."  June 22, 2015, Ltr. at 3.   GEICO also points to

Ambassador Insurance Co. v. St. Paul Fire & Marine Insurance Co., 753 F.2d 824 (10th Cir. 1985), in which the United States Court of Appeals for the Tenth Circuit recognized that, under New Mexico law, bad faith "is not a cause of action in and of itself."  June 22, 2015, Ltr. at 4 (internal quotation marks omitted).

GEICO argues that, under rule 26(b)(1) of the Federal Rules of Civil Procedure, discovery is allowed in any nonprivileged matter "'that is relevant to any party's claim or defense.'"  June 22, 2015, Ltr. at 4 (quoting Fed. R. Civ. P. 26(b)(1)).  GEICO contends that Ameri cannot establish that deposing Bratton would lead to the discovery of admissible evidence.  See June 22, 2015, Ltr. at 4.  GEICO asserts that, even if it has not arbitrated an underinsured or uninsured motorist claim in the last two years, "there is nothing improper about GEICO exercising its contractual and constitutional right to decline arbitration, any more than if the Plaintiffs declined to arbitrate."  June 22, 2015, Ltr. at 4.  GEICO argues that, consequently, even if Bratton confirms Ameri's allegations, "the deposition will be pointless, time-consuming, and a waste of resources."  June 22, 2015, Ltr. at 4.  GEICO urges: "There is simply no basis for the contorted argument that GEICO's choice to exercise its contractual and constitutional rights is in any way indicative of breach of contract or bad faith."  June 22, 2015, Ltr. at 1.  GEICO asserts that the Court should therefore deny the Motion.  See June 22, 2015, Ltr. at 4.

### 3. **The June 29, 2015, Letter.**

Ameri responded to the June 22, 2015, Ltr. on June 29, 2015.  See Letter from Richard J. Valle, Attorney for Ameri, to the Court (dated June 29, 2015), filed June 29, 2015 (Doc. 77)("June 29, 2015, Ltr.").  Ameri asserts that she filed suit for violations of the Unfair Insurance Practices Act, N.M. Stat. Ann. § 59A-16-20 ("UIPA"), and that she must show a prohibited practice "'by an insurer or other person knowingly committed or performed with such

- 7 -

frequency as to indicate a general business practice.'"   June 29, 2015, Ltr. at 1 (omission in Response but not quoted source)(quoting N.M. Stat. Ann. § 59A-16-20).   Ameri says that, in her initial disclosures, she identified an individual who will testify that Bratton refused to arbitrate a GEICO uninsured or underinsured motorist case, because it was GEICO's policy to not arbitrate those cases.   See June 29, 2015, Ltr. at 1.   Ameri points out that GEICO has denied that it has such a policy.   See June 29, 2015, Ltr. at 1.

Ameri says that she wants to know if Bratton will deny making his statements concerning GEICO's uninsured and underinsured motorist policy.   See June 29, 2015, Ltr. at 1.   Ameri contends that, based on the June 22, 2015, Ltr., it appears that Bratton will confirm his statement that GEICO has a policy of not arbitrating uninsured and underinsured motorist claims.   See June 29, 2015, Ltr. at 1.   Ameri says that she also wishes to question Bratton about GEICO's policies concerning the payment of claims and "low ball" evaluation of claims.   June 29, 2015, Ltr. at 1. Ameri contends that, by trying to confine discovery to the individuals who handled her insurance claim, GEICO is attempting to prevent her from proving a general business practice.   See June 29, 2015, Ltr. at 1.

Ameri argues that, although GEICO disputes the merits of Ameri's claims, it has not filed a summary judgment motion or other dispositive motion.   See June 29, 2015, Ltr. at 2.   In Ameri's view, GEICO does not address the fact that, in New Mexico, it "fails to disclose to insureds that it will never exercise a policy provision allowing arbitration, but it instead always requires trial."   June 29, 2015, Ltr. at 2 (emphases in original).   Ameri says that uninsured and underinsured arbiters are "usually members of the bar with experience handling claims" who will evaluate a claim in a professional manner.   June 29, 2015, Ltr. at 2.   Ameri contends that sometimes jurors focus on irrelevant events and that such distraction is less likely to occur with

arbitration before professionals.  See June 29, 2015, Ltr. at 2.  Ameri asserts: "That is one of the benefits of arbitration that GEICO is denying all of its New Mexico insureds."  June 29, 2015, Ltr. at 2.

4.      **The July 2, 2015, Letter.**

GEICO replied to the Response on July 2, 2015.  See Letter from Meloney Perry, Attorney for GEICO (dated July 2, 2015), filed July 2, 2015 (Doc. 78)("July 2, 2015, Ltr.").  In the July 2, 2015, Ltr., GEICO says that, despite Ameri's distrust of American juries, GEICO has a constitutional right to a trial by jury.  See July 2, 2015, Ltr. at 1.  GEICO argues that exercising that constitutional right is not grounds for either a breach-of-contract or a bad-faith claim.  See July 2, 2015, Ltr. at 1.  GEICO reiterates that, even assuming that Bratton's testimony would show that GEICO has not arbitrated an underinsured or uninsured motorist claim in the past two years, "it is wholly irrelevant."  July 2, 2015, Ltr. at 1.

GEICO asserts that, while Ameri initially requested to depose Bratton based solely on the arbitration issue, it appears -- based on the June 29, 2015, Ltr. -- Ameri also wants to depose Bratton regarding "general business practices."  July 2, 2015, Ltr. at 1 (internal quotation marks omitted).  GEICO points out that the appropriate mechanism for obtaining "information on corporate knowledge" is a deposition request under rule 30(b)(6) of the Federal Rules of Civil Procedure -- which Ameri has not served.  July 2, 2015, Ltr. at 1.  GEICO contends that the Plaintiffs have not set forth any justification why she should be allowed to bypass rule 30(b)(6)'s requirements to obtain Bratton's knowledge of any general business practice.  See July 2, 2015, Ltr. at 1.

GEICO urges that denying Ameri's deposition request would not confine Ameri's discovery, because the claims adjusters who handled Ameri's claim also have knowledge of

GEICO's general business practices.  See July 2, 2015, Ltr. at 1.  GEICO states that the parties have fact witness depositions scheduled for late August and "will be scheduling more to come." July 2, 2015, Ltr. at 2.  GEICO contends that, if Ameri is allowed to open up discovery as to any GEICO employee with knowledge of GEICO's general business practices "merely because that employee has knowledge of such practices," Ameri could depose anyone with knowledge of GEICO's business practices.  July 2, 2015, Ltr. at 2.  GEICO argues that, if the Court accepts Ameri's argument, Ameri's discovery would be "unlimited, harassing, cumulative, a waste of economy and resources, and in direct contravention of FRCP 30(b)(6)."  July 2, 2015, Ltr. at 2.

## RELEVANT LAW REGARDING DISCOVERY

Rule 26(b)(1) explains that the proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery appears reasonably calculated to lead to discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Federal courts have held that the scope of discovery under rule 26 is broad.  See Gomez v. Martin Marrietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").  The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947).  As a result of this policy, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case." Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-50 (D.N.M. 2007)(Browning, J.)(internal quotations marks omitted).

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir. 2002)(unpublished).[3] "'Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. CIV 11-1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00-7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93-5041 BMM, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery

---

[3]McGee v. Hayes is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that McGee v. Hayes has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." <u>Zenith Elecs. Corp. v. Exzec, Inc.</u>, 1998 WL 9181, at *2 (internal quotation marks omitted).

Rule 26(b)(1) was amended in 2000.  Before the 2000 amendments, rule 26(b)(1) defined the scope of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending actions, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.   The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1)(1996).  The 2000 amendments made the following changes, shown here in redline form with the deleted language stricken and the added material underlined:

> Parties may obtain discovery regarding any matter, not privileged, that ~~which~~ is relevant to ~~the subject matter involved in the pending actions, whether it relates to~~ the claim or defense of ~~the party seeking discovery or to the claim or defense of~~ any ~~other~~ party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  <u>For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant</u> ~~The~~ information ~~sought~~ need not be admissible at the trial if discovery the ~~information sought~~ appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Putting aside the changes to the last sentence -- which the advisory committee's notes make clear was a housekeeping amendment to clarify that inadmissible evidence must still be relevant to be discoverable -- the 2000 amendments have two effects: (i) they narrow the substantive scope of discovery in the first sentence; and (ii) they inject courts into the process in the entirely new second sentence.

> In 1978, the Committee published for comment a proposed amendment, suggested by the Section of Litigation of the American Bar Association, to refine

the scope of discovery by deleting the "subject matter" language.  This proposal was withdrawn, and the Committee has since then made other changes in the discovery rules to address concerns about overbroad discovery.  Concerns about costs and delay of discovery have persisted nonetheless, and other bar groups have repeatedly renewed similar proposals for amendment to this subdivision to delete the "subject matter" language.  Nearly one-third of the lawyers surveyed in 1997 by the Federal Judicial Center endorsed narrowing the scope of discovery as a means of reducing litigation expense without interfering with fair case resolutions.  Discovery and Disclosure Practice, supra, at 44-45 (1997).  The Committee has heard that in some instances, particularly cases involving large quantities of discovery, parties seek to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the "subject matter" involved in the action.

The amendments proposed for subdivision (b)(1) include one element of these earlier proposals but also differ from these proposals in significant ways.  The similarity is that the amendments describe the scope of party-controlled discovery in terms of matter relevant to the claim or defense of any party.  The court, however, retains authority to order discovery of any matter relevant to the subject matter involved in the action for good cause.  The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery.  The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery.  Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the attorneys surveyed by the Federal Judicial Center.  See Discovery and Disclosure Practice, supra, at 44. Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

**The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard.  Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information.  Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be**

**properly discoverable.  In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.**

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.  In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention.  When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

The amendments also modify the provision regarding discovery of information not admissible in evidence.  As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible.  The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery.  Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence.  As used here, "relevant" means within the scope of discovery as defined in this subdivision, and it would include information relevant to the subject matter involved in the action if the court has ordered discovery to that limit based on a showing of good cause.

Finally, a sentence has been added calling attention to the limitations of subdivision (b)(2)(i), (ii), and (iii).  These limitations apply to discovery that is otherwise within the scope of subdivision (b)(1).  The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that was contemplated.  See 8 Federal Practice & Procedure § 2008.1 at 121.  This otherwise redundant cross-reference has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery.  Cf. Crawford-El v. Britton, 118 S. Ct. 1584, 1597 (1998)(quoting Rule 26(b)(2)(iii) and stating that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

Fed. R. Civ. P. 26 advisory committee's notes (emphasis added).

The Court gets the impression from reading the advisory committee's notes that the

amendment was not intended to exclude a delineable swath of material so much as it is intended

to send a signal to district judges to become more hands-on in the process of regulating -- mostly limiting -- discovery on relevance grounds alone.  The "two effects" of the 2000 amendments might, thus, be only one effect: directing district judges to roll up their sleeves and manage discovery, and to do so on the basis of relevance.  The change in substantive scope from "subject matter," to "claim or defense," would, therefore, seem to exist more to "add teeth" to the relevance standard than to effectuate a substantive narrowing.  It is not surprising that Congress would want to increase judicial presence: "relevance" is a wide-open concept even in the context of trial, see Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."), and it is often said that relevance for discovery is an even broader concept.  One might then say that old rule 26(b)(1)'s relevant discovery provision was toothless. It is likewise unsurprising that the rulemakers are unable to articulate precise language narrowing the substantive scope of discovery: no single general rule can adequately take into account the infinite number of possible permutations of different claims, defenses, parties, attorneys, resources of parties and attorneys, information asymmetries, amounts in controversy, and availabilities of information by other means.  The determination requires the individualized judgment of someone on the scene, and that presence is what the rulemakers wanted when they: (i) encouraged district judges to take a firmer grasp on the scope of discovery; and (ii) put their thumbs on the scale in favor of narrower discovery in the rule's definition of the scope of discovery.

Of course, courts should also seek to give substantive content to amendments.  Read literally, the rule does not permit parties to discover information relevant only to the claim or defense of another party; they must use discovery only to investigate their own claims and

defenses.  More problematically, however, the rule may prevent using the Federal Rules' compulsory discovery process to obtain "background" information not specifically relevant to any one claim or defense -- e.g., a plaintiff naming a pharmaceutical company as a defendant and then using discovery to educate itself generally about medicine, biochemistry, and the drug industry by using the defendant's expertise.

In In re Cooper Tire & Rubber Co., 568 F.3d 1180 (10th Cir. 2009), the Tenth Circuit clarified that the 2000 Amendments to rule 26 "implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action."  568 F.3d at 1188.  The Tenth Circuit further stated that,

> when a party objects that discovery goes beyond that relevant to the claims or defenses, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action."  This good-cause standard is intended to be flexible.  When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be.  "[T]he actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested."

568 F.3d at 1188-89 (quoting the advisory committee's notes to the 2000 amendments to Fed. R. Civ. P. 26(b)(1))(citations omitted)(footnote omitted)(alteration in original).

## LAW REGARDING MOTIONS TO COMPEL

Rule 37 provides tools for parties to enforce the discovery rules.  Rule 37(a)(3)(A) authorizes a motion to compel a party's initial disclosures under rule 26(a).  See Fed. R. Civ. P. 37(a)(3)(A).  Rule 37(a)(3)(B) says that a party may file a motion to compel discovery when: (i) a deponent fails to answer a question; (ii) a party fails to answer an interrogatory; (iii) a party fails to respond to a rule 34 request for production; or (iv) a corporate party fails to designate a

representative to respond on its behalf to discovery.  See Fed. R. Civ. P. 37(a)(3)(B).  Rule 37(a)(3)(C) allows a party which seeks to compel an answer to a deposition to complete the deposition before moving to compel an answer or adjourn the deposition to obtain a court order compelling the answer.  See Fed. R. Civ. P. 37(a)(3)(C).

In addition to the usual formal requirements for filing motions, a party must satisfy a two threshold requirements before filing a motion to compel: (i) serve a formal discovery request on the responding party pursuant to rules 30, 31, 33, or 34 of the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 37(a)(3); and (ii) confer or attempt to confer with the responding party in good faith to attempt to obtain the discovery, see Fed. R. Civ. P. 37(a)(1), (4).  The Court has previously denied a motion to compel where the movant never served the responding party with a formal discovery request under rules 30, 31, 33, or 34.  See Simon v. Taylor, No. CIV 12-0096 JB/WPL, 2014 WL 6633917, at *28 (D.N.M. Nov. 18, 2014)(Browning, J.).  Quoting the Honorable Thomas P. Smith, United States Magistrate Judge for the District of Connecticut, the Court explained:

> The Federal Rules of Civil Procedure are designed to enable a relatively small judiciary to deal in an orderly way with a virtually limitless number of disputes. Even when parties sedulously comply with the rules of procedure, courts must struggle to keep abreast of their ever-growing dockets. By pioneering their own ad hoc procedure, parties do themselves and the courts a disservice. It is far easier and quicker to make a formal document request pursuant to Rule 34 than it is to construct and articulate an argument why an informal letter should be treated as a Rule 34 request so as to enable it to be enforced under Rule 37. When parties fashion their own procedure, they remove their cases from the litigative stream and, when a dispute later arises, almost invariably consume more than their fair share of judicial time.

Simon v. Taylor, 2014 WL 6633917, at *27 (emphases in original)(quoting Schwartz v. Marketing Publishing Co., 153 F.R.D. 16, 21 (D. Conn. 1994))(internal quotation marks omitted).

- 17 -

## LAW REGARDING THE UIPA

The UIPA imposes liability for a laundry list of unfair insurance claims practices, including the following:

A.    misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

B.    failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;

C.    failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

D.    failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;

E.    not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

F.    failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;

G.    compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

H.    attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

I.    attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker;

J.    failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;

K.    making known to insureds or claimants a practice of insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose

of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

L.     delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

M.     failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;

N.     failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

O.     violating a provision of the Domestic Abuse Insurance Protection Act.

N.M. Stat. Ann. § 59A-16-20.

The Honorable Bruce D. Black, United States District Judge for the District of New Mexico, has concluded that a plaintiff failed to plausibly plead a UIPA claim:

> Dr. Yumukoglu alleges generally that Provident's conduct "violates one or more of the provisions of Section 59A-16-20 NMSA 1978 (1984)," the section of the New Mexico Unfair Insurance Practices Act that prohibits unfair claims practices. Dr. Yumukoglu does not specify which of the fifteen provisions of this section he feels Provident has violated, and after a review of the statute, the Court cannot perceive which subsection could have been violated under the fact alleged. At the very least, Dr. Yumukoglu has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires that a civil complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Here, it is not clear either what Dr. Yumukoglu is claiming or to what relief he is entitled under § 56A-16-20. Dr. Yumukoglu's claim appears, like his claim for breach of the duty of good faith and fair dealing, to be based on Provident's alleged bad faith in terminating his disability benefits. As discussed above, the Court finds that Provident's decision to terminate Dr. Yumukoglu's benefits did not amount to bad faith. Provident's motion for summary judgment on Plaintiff's claim for statutory violation is granted.

Yumukoglu v. Provident Life & Accident Ins. Co., 131 F. Supp. 2d 1215, 1227 (D.N.M. 2001)(Black, J.)(footnote omitted)(citations omitted).   The Court has previously found that a

plaintiff failed to state a claim under rule 12(b)(6) when the complaint did not contain even "a

formulaic recitation of the elements of a cause of action" under the UIPA.  Estate of Gonzales v.

AAA Life Ins. Co., No. CIV 11-0486 JB/WDS, 2012 WL 1132332, at *7 (D.N.M. Mar. 28,

2012)(Browning, J.)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

## LAW REGARDING RULE 30(b)(6)

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides:

> In its notice or subpoena, a party may name as the deponent a public or private
> corporation, a partnership, an association, a governmental agency, or other entity
> and must describe with reasonable particularity the matters for examination. The
> named organization must then designate one or more officers, directors, or
> managing agents, or designate other persons who consent to testify on its behalf;
> and it may set out the matters on which each person designated will testify. A
> subpoena must advise a nonparty organization of its duty to make this
> designation. The persons designated must testify about information known or
> reasonably available to the organization. This paragraph (6) does not preclude a
> deposition by any other procedure allowed by these rules

Fed. R. Civ. P. 30(b)(6).  "Under Rule 30(b)(6), when a party seeking to depose a corporation

announces the subject matter of the proposed deposition, the corporation must produce someone

familiar with that subject."  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 268 (2d Cir. 1999).

"To satisfy Rule 30(b)(6), the corporate deponent has an affirmative duty to make available

'such number of persons as will' be able 'to give complete, knowledgeable and binding answers'

on its behalf."  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d at 268.  Accord Gulfstream

Worldwide Realty, Inc. v. Phillips Elec. N. Am. Corp., No. CIV 06-1165 JB/DJS, 2007 WL

5704041, at *5 (D.N.M. Oct. 24, 2007)(Browning, J.)("A corporation must prepare its designated

representative to provide complete, knowledgeable, and binding answers on the corporation's

behalf.").  "The purpose behind designating a witness to represent the corporation is to prevent

bandying, which is the practice of presenting employees for their depositions who disclaim

knowledge of the facts known by other individuals within the organization."  Gulfstream

Worldwide Realty, Inc. v. Phillips Elec. N. Am. Corp., 2007 WL 5704041, at *5 (internal

quotation marks omitted).

> The United States District Court for the District of Connecticut has recognized:
>
> A deponent under Rule 30(b)(6) has an affirmative obligation to educate himself
> as to the matters regarding the corporation.  This includes all matters that are
> known or reasonably available to the corporation.  Even if the documents are
> voluminous and the review of the documents would be burdensome, the
> deponents are still required to review them in order to prepare themselves to be
> deposed.

Concerned Citizens v. Belle Haven Club, 223 F.R.D. 39, 43 (D. Conn. 2004)(citations

omitted)(internal quotation marks omitted).  The court in Concerned Citizens v. Belle Haven

Club went on to hold that this duty to review, and, in essence, become educated about the

information available to the corporation, applies even if the information is voluminous and

multiple people must be consulted to collect the information known to the corporation.  See 223

F.R.D. at 43.  The United States District Court for the District of Columbia has stated:

> Although there is not an abundance of case law on the topic of Rule
> 30(b)(6), and nearly no case law in this circuit, certain principles are consistent in
> every court opinion to address these issues so far.  First, the deponent has the duty
> of being knowledgeable on the subject matter identified as the area of inquiry.
>
> Clearly, a deponent that does not know about the subject matter to be
> inquired about is useless as a deponent at all.  Second, the designating party is
> under the duty to designate more than one deponent if it would be necessary to do
> so in order to respond to the relevant areas of inquiry that are specified with
> reasonable particularity by the plaintiffs.  Third, the designating party has a duty
> to prepare the witness to testify on matters not only known by the deponent, but
> those that should be reasonably known by the designating party.  Obviously, the
> purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter
> described with reasonable particularity by the noticing party, not to simply get
> answers limited to what the deponent happens to know.  Fourth, the designating
> party has a duty to substitute an appropriate deponent when it becomes apparent
> that the previous deponent is unable to respond to certain relevant areas of
> inquiry.

Alexander v. FBI, 186 F.R.D. 137, 141 (D.D.C.1998) (citations omitted).  Accord 17 James W.

Moore, et al., Moore's Federal Practice § 30.25[3], at 30-67 (Matthew Bender 3d ed.

2013)(stating the factors from Alexander v. FBI).  The United States District Court for the

District of Utah has ruled the same way, holding that the entity receiving a rule 30(b)(6) notice

has a duty

> to prepare those persons in order that they can answer fully, completely,
> unevasively the questions posed . . . as to the relevant subject matters.  The duty
> to prepare the designee imposed by the rule goes beyond matters personally
> known to the designee or to matters in which that designee was personally
> involved.  Such preparation requires a good faith effort [by] the designate to find
> out the relevant facts -- to collect information, review documents, and interview
> employees with personal knowledge.  The duty of preparation may require the
> interviewing of past employees.

United States v. Magnesium Corp. of Am., No. CIV 01-40DB, 2006 WL 6924985, at *4

(D. Utah Nov. 27, 2006)(Nuffer, J.)(footnote omitted)(internal quotation marks omitted).

Accord Peshlakai v. Ruiz, No. CIV 13-0752 JB/ACT, 2014 WL 459650, at *25 (D.N.M. Jan. 9,

2014)(Browning, J.).  As a general matter, a corporation may designate any person as a corporate

representative if they can meet the necessary criteria to satisfy rule 30(b)(6).  See Gulfstream

Worldwide Realty, Inc. v. Phillips Elec. N. Am. Corp., 2006 WL 6924985, at *5 (discussing how

it may sometimes be necessary for a corporation to designate former employees as a rule

30(b)(6) deponent); 7 J. Moore, supra § 30.25[3], at 30-69 ("There is no rule that would prevent

corporate counsel, or even a corporation's litigation counsel, from serving as a Rule 30(b)(6)

deponent.").

## ANALYSIS

The Court will grant the Motion in part and deny it in part.  The Court will order GEICO

to allow Ameri to depose Bratton.  The Court will not order GEICO to pay Ameri's attorney's

fees for litigating the Motion, however, because of the unique informal circumstances in which Ameri raised the Motion.

## I.   THE COURT WILL ORDER GEICO TO ALLOW AMERI TO DEPOSE BRATTON.

"Rule 26 provides for broad and liberal discovery."  Brown v. Montoya, No. CIV 10-0081 JB/ACT, 2013 WL 1010390, at *19 (D.N.M. Mar. 8, 2013)(Browning, J.).  See Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve full disclosure of all potentially relevant information.").  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information is relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Ameri alleges that GEICO's conduct in handling her insurance claim violated the UIPA. Specifically, Ameri contends that GEICO

> knowingly engaged in acts with such frequency as to indicate a general business practice of failing to act reasonably promptly with respect to claims from insureds arising under policies; and not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear with such frequency as to indicate that such conduct is GEICO's general business practice.

Complaint ¶ 74, at 7-8.  Ameri seeks to depose Bratton, because she wants to know if he will confirm or deny his previous statement that GEICO has a policy of not arbitrating uninsured and underinsured motorist claims in New Mexico.  See June 29, 2015, Ltr. at 1. GEICO asserts that the Policy includes a provision stating that neither party is required to arbitrate underinsured or uninsured motorist claims, and that New Mexico law does not require GEICO to arbitrate those claims.  See June 22, 2015, Ltr. at 1-3.  GEICO contends that, because it has a constitutional and

contractual right to refuse to arbitrate underinsured and uninsured motorist claims, it could not have breached its contract with Ameri or acted in bad faith by asserting that right.  See June 22, 2015, Ltr. at 3-4.  GEICO asserts that, accordingly, even if Bratton confirms that GEICO has a policy of refusing to arbitrate uninsured and underinsured motorist claims in New Mexico, his testimony is irrelevant.  See June 29, 2015, Ltr. at 1.  GEICO's argument misses the mark.

To be sure, the Supreme Court of New Mexico has upheld consensual arbitration provisions in an uninsured and underinsured motorist clause similar to the arbitration provision in the Policy.  See McMillan v. Allstate Indem. Co., 2004-NMSC-002, ¶ 20 ("We conclude that Allstate's consensual arbitration provision in its standard UM endorsement does not violate New Mexico law or public policy.").  That the Supreme Court of New Mexico has upheld a consensual arbitration provision in one case does not necessarily mean that GEICO has a constitutional or contractual right to adopt a blanket policy of never arbitrating underinsured or uninsured motorist claims in New Mexico.  No court has found such a right, and, without deciding the merits of Ameri's claims, there is at least a possibility that such a policy may violate the UIPA's requirement that insurance providers "attempt[] in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear."  N.M. Stat. Ann. § 59A-16-20E.  As the issue presented in this case appears to be a matter of first impression, the Court is reluctant to foreclose Ameri from obtaining discovery on the issue.  Because Bratton's testimony that GEICO has a policy of refusing to arbitrate underinsured and uninsured motorist claims in New Mexico may be relevant to proving Ameri's UIPA claim, it is discoverable.

GEICO's "slippery slope" argument -- i.e., that allowing Ameri to depose Bratton would open the door to her deposing "anyone with knowledge of GEICO's business practices," July 2,

2015, Ltr. at 2 -- is similarly unfounded.  Ameri has not asked to depose dozens of GEICO employees about all of GEICO's business practices.  Up to this point, she has requested to depose only three GEICO employees: Bratton and two other claims adjusters, both of whom handled Ameri's claims.  Moreover, Ameri seeks to depose Bratton on one specific policy, has a well-founded reason to believe that Bratton is aware of that policy, and that Bratton has previously spoken to others about that policy.  Rather than proposing an unduly burdensome or unnecessary "fishing expedition" with the hopes of finding relevant information, Ameri's request is narrowly tailored to obtain information regarding her UIPA claim.  As GEICO has not asserted any privilege or other reason why it cannot disclose this information, the Court sees no sound reason to prevent Ameri from obtaining it.  Blocking the single deposition would undermine the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  Hickman v. Taylor, 329 U.S. at 507.

Nor does the Court agree with GEICO that granting Ameri's motion would run afoul of rule 30(b)(6).  Rule 30(b)(6) is a discovery sword that allows parties to obtain information; it is not a shield that prevents them from having to disclose it.  A plaintiff can depose employees of a company and also file a rule 30(b)(6) deposition request; they are not mutually exclusive.  See Fed. R. Civ. P. 30(b)(6) ("[T]his paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.").  Accordingly, Ameri need not file a rule 30(b)(6) request to depose witnesses with personal knowledge of issues relevant to her case.

It was clear at the hearing that Ameri intended to depose Bratton regarding a "general business practice" of GEICO.  Tr. at 43:1-9 (Valle)("The third deposition is for somebody who has no knowledge of the facts of this case, but he represented to another attorney that GEICO has a policy of never agreeing to arbitration in New Mexico.").  Ameri can use a rule 30(b)(6) or she

can depose an identified witness.  For GEICO to now say that Ameri needs to file a formal request under rule 30(b)(6) is somewhat in tension with the parties' agreement at the hearing to resolve the parties' narrow dispute about the discoverability of the information informally. Moreover, if GEICO intends to oppose Ameri's request and ask the Court to resolve it anyway, the Court sees no reason why the Court and Ameri should have to waste time and other resources to end up in the same place.  Ultimately, Bratton's testimony is relevant and GEICO has not offered any sound reason why the Court should not allow Ameri to depose him.  Accordingly, the Court will order GEICO to allow her to depose Bratton.

## II.     THE COURT WILL NOT AWARD ATTORNEY'S FEES TO AMERI.

At the hearing, Ameri asked the Court to award her attorney's fees for having to litigate a motion to compel.  See Tr. at 44:21-22 (Valle).  Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides for the award of fees upon the resolution of a party's motion to compel.  See Fed. R. Civ. P. 37(a)(5)(A).

> If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:
>
> > **(i)**     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > **(ii)**    the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > **(iii)**   other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

There is a lack of evidence in the record detailing the procedures that the parties employed to resolve this dispute before requesting the Court to intervene.  Ameri has not

explained, for example, whether she conferred or attempted to confer with GEICO in good faith to attempt to conduct the deposition, as rule 37(a)(5)(A) requires. Ameri has not referred to or provided to the Court any formal requests to depose Bratton that she served on GEICO. In short, it seems that Ameri either requested the deposition informally or simply assumed that GEICO would allow her to depose Bratton with the other two claims adjusters. Accordingly, the Motion has made its way to the Court under unusual facts and circumstances. The Motion is in this unique procedural posture, because the Court allowed Ameri to make the motion orally and the parties to brief the issue through letters rather than a formal briefing process. The Court only took this approach, because both parties agreed to it at the hearing. See Tr. at 47:7-25 (Valle, Perry).

The parties appear to have cooperated in framing the issue for the Court; their presentation, however, is more of a request for the Court to rule on whether Bratton's deposition testimony is discoverable rather than an attempt to resolve a traditional discovery dispute through court compulsion. The Court cannot say that, in light of the objections that GEICO raised, that GEICO was unreasonable in wishing the Court to rule on the matter before allowing Ameri to depose Bratton. Indeed, GEICO may ultimately prevail -- the UIPA may never require arbitration -- and, in that case, GEICO's position would be substantially justified. Given that the parties cooperated to resolve this dispute relatively inexpensively, the Court concludes that the circumstances do not call for an award of expenses. In sum, the Court believes that, because of the lack of evidence in the record regarding the formal steps that Ameri took to depose Bratton, because of the unique method in which this dispute has come before the Court, and because GEICO's legal position on arbitration may ultimately be correct and its position in this discovery dispute substantially justified, an award of attorneys' fees and costs is not appropriate.

**IT IS ORDERED** that Plaintiff Theresa S. Ameri's oral motion at the June 10, 2015, hearing to compel Defendant GEICO General Insurance Company to allow her to depose Austin Bratton, a GEICO claims adjuster, and award attorney's fees, is granted in part and denied in part. The Court will allow Ameri to depose Bratton, but will not award Ameri attorney's fees.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Richard J. Valle
Andrea D. Harris
Carter & Valle Law Firm, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Daniel W. Lewis
Christopher P. Winters
Allen, Shepherd, Lewis, Syra & Chapman, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant as to the Underinsured Motorist and Contract Claims*

Donna L. Chapman
Amy Elizabeth Headrick
Chapman & Charlebois, P.C.
Albuquerque, New Mexico

--and--

Meloney Perry
Perry Law, P.C.
Dallas, Texas

    *Attorneys for the Defendant as to the Extra-Contractual Claims*